******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMMAR IDLIBI *v.* HARTFORD COURANT COMPANY
(AC 44977)

Cradle, Suarez and Seeley, Js.

*Syllabus*

The self-represented plaintiff, a pediatric dentist, sought to recover damages
for, inter alia, defamation and intentional misrepresentation in connec-
tion with two articles published by the defendant. The articles concerned
the plaintiff's disciplinary proceedings before the Connecticut State Den-
tal Commission (commission) that stemmed from a complaint about
his treatment of a three year old child. A reporter employed by the
defendant contacted the plaintiff after he learned of a similar complaint
against another dentist at the plaintiff's dental practice. The reporter
left the plaintiff a voicemail, in which he asked for an interview. The
parties disputed whether the reporter informed the plaintiff in that
voicemail or in subsequent conversations that he would be the subject
of the published articles. The defendant filed a motion for summary
judgment on all counts of the plaintiff's complaint, arguing, inter alia,
that it was protected from liability for defamation under the fair report
privilege and substantial truth doctrine and that the plaintiff's intentional
misrepresentation claim was legally insufficient. In his objection to the
motion for summary judgment, the plaintiff pointed to specific state-
ments in the articles to which he objected, including the headline of
the first article, and argued that the recorded voicemail from the reporter
provided sufficient evidence to support his claim of misrepresentation.
The court granted the defendant's motion for summary judgment, con-
cluding that the alleged defamatory statements were protected under
either the fair report privilege, which protects the publication of a report
of an official action or proceeding that deals with a matter of public
concern if the report is accurate and complete or a fair abridgment of
the proceeding, or the substantial truth doctrine. Moreover, on the basis
of an email exchange between the reporter and a senior editor employed
by the defendant, which indicated that the original draft of at least one
of the articles had referenced the second dentist, the court held that,
because the reporter's affirmative representation was true, the reporter
had no duty to tell the plaintiff he would be the subject of the defendant's
article, and the plaintiff had no legal right to interfere with the defen-
dant's publication of a story about him, the defendant was entitled
to summary judgment on the plaintiff's intentional misrepresentation
claim. *Held*:

1. The trial court did not err in granting summary judgment with respect
to the plaintiff's defamation claims on the basis that the fair report
privilege protected the defendant from liability:

a. The trial court properly found that the statement in one of the defen-
dant's articles that the Department of Public Health had been investigat-
ing the plaintiff for two years was protected by the fair report privilege,
as it was a fair and accurate abridgement of the underlying proceedings;
moreover, if describing the proceedings before the commission as an
"investigation" strayed from the truth of the matter, it did so only slightly
and well within the leeway afforded to reporters of official matters of
public concern.

b. The plaintiff could not prevail on his claim that the defendant abused
the fair report privilege because the headline of one article used the
word "children" rather than the word "child" and conveyed a message
that the state's inquiry extended beyond the three year old child: the
headline was accurate overall and any imprecision therein was amelio-
rated by the accuracy of the article's abridgement of the proceedings,
which clearly indicated that the case involved only one child.

c. This court declined to review the plaintiff's claim that the defendant's
use of a specific statistic from another state agency in one of the articles
was an abuse of the fair report privilege: the trial court determined that
the fair report privilege did not apply to that statement, and, instead,
that it was exempt from liability for defamation because that statistic
was substantially true; moreover, the plaintiff failed to sufficiently brief

his argument that the statistic was not substantially true.

2. The trial court properly granted the defendant's motion for summary judgment with respect to the claim of intentional misrepresentation: contrary to the plaintiff's claim, the trial court did not choose between competing interpretations of fact, rather, the reporter's statement that he was working on an article about another dentist was apparently true, thus defeating any claim of intentional misrepresentation.

Argued September 12—officially released December 13, 2022

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Farley, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Ammar A. Idlibi*, self-represented, the appellant (plaintiff).

*William S. Fish, Jr.*, with whom was *Alexa T. Millinger*, for the appellee (defendant).

*Opinion*

CRADLE, J. The self-represented plaintiff, Ammar Idlibi, a pediatric dentist, appeals from the summary judgment rendered in favor of the defendant, Hartford Courant Company, on his claims of defamation and intentional misrepresentation.[1] This appeal arises from two articles the defendant published reporting on the plaintiff's disciplinary proceedings before the Department of Public Health (DPH) and the Connecticut State Dental Commission (commission). On appeal, the plaintiff claims that the court erroneously (1) concluded that the fair report privilege applied to the allegedly defamatory statements made by the defendant, and (2) rendered summary judgment on the plaintiff's intentional misrepresentation claim. We disagree and, therefore, affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party on the prevailing motion for summary judgment, reveals the following facts and procedural history. The plaintiff was the subject of two separate disciplinary proceedings beginning in 2013 and 2016. The first proceeding followed allegations that the plaintiff improperly prescribed medications, outside the scope of dentistry, to himself and his family.[2]

The second proceeding arose from the plaintiff's treatment of a three year old patient on April 26, 2016. On the scheduled treatment date, the plaintiff placed the patient under general anesthesia and placed crowns on eight of her teeth without the consent of the patient's mother, who had provided informed consent for the placement of only one crown. The patient's mother submitted a complaint to DPH, which subsequently led to charges before the commission. A panel of commissioners (panel) conducted hearings on January 11 and 16, 2018, following which the panel submitted a proposed decision to the commission, pursuant to General Statutes § 4-179,[3] and notified the plaintiff and DPH's attorney that a hearing on the proposed decision would be held before the full commission on September 5, 2018.[4]

On or about August 31, 2018, prior to the plaintiff's full commission hearing, Matthew Ormseth, a reporter employed by the defendant, called the plaintiff and left him the following voicemail message: "Hi, Ammar, my name is Matt Ormseth. I'm a reporter with the Hartford Courant. . . . [A] woman who put her daughter into Smile by Design[5] . . . a few weeks ago told me that her daughter went through a pretty traumatic experience there and ended up having four teeth extracted and having eight stainless steel crowns installed in about a half hour, and she's very concerned about this. And she's going to DPH, and . . . I learned from DPH that . . . you're being investigated for doing something sim-

ilar to a three year old girl, and you've got a hearing coming up on September 5th, and . . . I just want to hear your side of the story and . . . give you the opportunity to respond to some of these complaints, some of these allegations. . . ." (Footnote added.) Ormseth then provided his phone number and encouraged the plaintiff to call him back. The plaintiff later returned Ormseth's call, but the substance of their discussion is disputed by the parties. The plaintiff alleges that Ormseth never informed the plaintiff that he would be the subject of the published article, and Ormseth avers that he did.

On September 5, 2018, before the plaintiff's commission hearing, the defendant published an article, authored by Ormseth, entitled "State Probes Terryville Dentist for Excessive Work on Children's Teeth" (first article). The article included an image of a child undergoing a dental procedure.[6] Following the image, the article begins with the following statements: "The 3-year-old girl had been told she needed a crown. When the operation was over, she had eight.

"After a two-year investigation, the state Department of Public Health has concluded the work was unnecessary and medically unsound, and recommended that the man who did it, Terryville dentist Ammar Idlibi, be fined, put on probation and be monitored regularly. A hearing before the state's dental oversight board is set for Wednesday."

The first article then includes information from an interview with David Dearborn, a spokesperson for the Department of Social Services (DSS). Among the information attributed to Dearborn is the following statistic published in the first article: "In Connecticut, just 37 steel crowns were placed on kids under general anesthesia who were insured by Medicaid in the last fiscal year." The first article subsequently states that, "[d]espite the DPH inquiry and a $2,000 penalty in 2014 for prescribing codeine, Xanax, Valium and other drugs outside the scope of dentistry to himself and family members, [the plaintiff] has been allowed to keep practicing and treating children. His license was not suspended while DPH investigated." (Internal quotation marks omitted.)

On the same day, September 5, 2018, after conducting its hearing, the commission concluded that "the plaintiff (1) failed to obtain adequate informed consent from the patient's mother to place crowns on eight of the patient's teeth, (2) placed one or more crowns without adequate justification, (3) failed to chart findings of cervical decalcification adequately, (4) failed to attempt treatment of the cervical decalcification by other means, and (5) failed to chart caries or other dental disease adequately for one or more of the teeth that was crowned. The only charge that the commission did not find against the plaintiff was the allegation that

the plaintiff had failed to make adequate attempts at treatment without general anesthesia, as the commission determined there was insufficient evidence to support that charge. Subsequently, the commission ordered sanctions against the plaintiff, including the payment of a $10,000 civil penalty, placement of a reprimand on his license, and a three year probationary period during which his license would be subject to conditions."[7] *Idlibi* v. *State Dental Commission*, 212 Conn. App. 501, 510–11, 275 A.3d 1214, cert. denied, 345 Conn. 904, 282 A.3d 980 (2022).

Later that same day, the defendant published a second article—this one entitled: "Dental Board Disciplines Terryville Dentist for Doing Unnecessary Work on 3-Year-Old" (second article). The second article reported on the commission's decision and then largely restated the same information published in the first article.

On August 26, 2020, the plaintiff commenced this action by way of a four count complaint alleging defamation, intentional misrepresentation, negligent infliction of emotional distress, and gross negligence. On January 22, 2021, the defendant filed a motion for summary judgment on all four counts of the plaintiff's complaint.[8] As to the defamation claim, the defendant argued that it was entitled to judgment as a matter of law because it was protected from liability for defamation under the fair report privilege and substantial truth doctrine. The defendant further asserted that the plaintiff needed to demonstrate that the defendant acted with actual malice to succeed on his defamation claim. Regarding the intentional misrepresentation claim, the defendant argued that the claim was legally insufficient.

In his opposition to the defendant's motion, filed February 16, 2021, the plaintiff responded that five statements from the two articles were false and, further, the defendant was not entitled to the fair report privilege on the basis thereof: the first article's headline; the statement that DPH conducted a two year investigation into the plaintiff; the statement that DPH concluded that the plaintiff's treatment of the patient was unnecessary and medically unsound; the statistic that "37 steel crowns were placed on kids under general anesthesia who were insured by Medicaid" in the previous year; and the statement regarding the plaintiff's prescribing medications outside the scope of dentistry to himself and his family. Additionally, the plaintiff argued that Ormseth's August 31, 2018 voicemail message provided sufficient evidence to support his claim of intentional misrepresentation. In response, the defendant asserted that the statements identified by the plaintiff were substantially true and privileged. The plaintiff subsequently filed a surreply memorandum on April 12, 2021, reasserting that the five statements listed in his memorandum in opposition of summary judgment were defama-

tory and not privileged.[9]

In its August 6, 2021 memorandum of decision, the court found in favor of the defendant and rendered summary judgment on the plaintiff's defamation claim because the alleged defamatory statements were protected under either the fair report privilege or the substantial truth doctrine.[10] Moreover, the court held that, "[b]ecause Ormseth's affirmative representation was true, because he had no duty to tell the plaintiff he would be the subject of [the defendant's] article, and because the plaintiff had no legal right to interfere with the [defendant's] publication of a story about him, the [defendant] is entitled to summary judgment on" the plaintiff's intentional misrepresentation claim. Following the court's rendering of summary judgment, on August 12, 2021, the plaintiff filed a motion to reargue. The court denied that motion on September 8, 2021. This appeal followed. Additional facts and procedure will be set forth as necessary.

On appeal, the plaintiff claims that the trial court erred in (1) concluding that the fair report privilege provided grounds for granting summary judgment on the plaintiff's defamation claims, and (2) granting summary judgment on the plaintiff's intentional misrepresentation claim.

We begin by setting forth the applicable standard of review. "Our review of a trial court's decision to grant a motion for summary judgment is well settled. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Elder* v. *21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 420, 254 A.3d 344 (2021). "[T]he determination of whether the contents of a newspaper article are privileged as fair reporting is an issue of law over which we exercise plenary review." (Internal quotation marks omitted.) Id., 424.

With these principles in mind, we address the plaintiff's claims in turn.

I

The plaintiff first claims that the court erred in granting the defendant's motion for summary judgment as to the plaintiff's defamation claims on the basis that the fair report privilege protected the defendant from liability for statements made in the two September 5, 2018 articles. We disagree.

"The fair report privilege is well established. The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported. . . . If the report is accurate or a fair abridgment of the proceeding, an action cannot constitutionally be maintained for defamation. . . . The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se." (Citation omitted; internal quotation marks omitted.) Id., 422. "Abuse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding." Id.

The plaintiff argues that the defendant abused the fair report privilege in its publication of (1) the statement that DPH had been investigating the plaintiff for two years, and (2) the headline "State Probes Terryville Dentist for Excessive Work on Children's Teeth."[11]

A

The plaintiff first claims that the defendant abused the fair report privilege by using the word "investigation" to describe the DPH complaint and resulting proceedings and by stating that the "investigation" spanned two years.

"[T]he fair reporting privilege requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings . . . . The accuracy required is to the proceedings, not to the objective truth of the [alleged] defamatory charges. . . . Further, the fair report privilege affords leeway to an author who attempts to recount and popularize an . . . event. . . . The author's job is not simply to copy statements verbatim, but to interpret and rework them into the whole. . . . A fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts. . . . [T]he author of a news article reporting on a judicial decision has no duty to conduct an impartial investigation of the underlying

facts of the case—[t]he only question is whether the news article represents a substantially accurate report of the court decision upon which it is reporting." (Citations omitted; internal quotation marks omitted.) Id., 424.

In the present case, it was substantially accurate for the defendant to state that DPH had engaged in an investigation of the plaintiff. The court rejected the plaintiff's argument that use of the word "investigation" was misleading and, in its memorandum of decision, noted that "any potential ambiguity raised by using the word 'investigation' instead of the word 'proceeding' was avoided by the substance of what the [defendant] accurately reported." The defendant adopts the court's rationale on appeal and additionally highlights that "a letter from DPH to the Connecticut Children's Medical Center dated May 26, 2016, [referenced] the petition against the plaintiff . . . and [stated] that DPH is conducting 'an investigation. . . .' " The letter was attached as an exhibit to Ormseth's supplemental affidavit, filed with approval from the court on April 21, 2021.

Although "investigation" may give rise to more insidious implications than the word "proceedings," the defendant owes no duty to the plaintiff to use the exact word used by the official as long as the word it chooses is a substantially accurate report of official proceedings. *Elder* v. *21st Century Media Newspaper, LLC*, supra, 204 Conn. App. 428. To that end, DPH's use of the word "investigation" to describe the proceedings in its May 26, 2016 letter supports the accuracy of its use in the article. Further, if describing the proceedings before the commission as an "investigation" strayed from the truth of the matter, it did so only slightly, and well within the leeway afforded to reporters of official matters of public concern. See id., 427 (holding fair report privilege applicable where defendant newspaper used the word "impersonating" rather than "misidentifying himself" because it was a "miniscule [departure from fact] and can be attributed to the leeway afforded an author who attempts to recount and popularize an . . . event" (internal quotation marks omitted)).

Turning to the "two-year" designation used in the first article, in its memorandum of decision, the court noted the relevant timeline of the proceedings: "The underlying incident occurred in April, 2016, the DPH complaint was filed in September, 2017, and the [commission's] decision was issued two years later." The plaintiff does not dispute this timeline on appeal.

Therefore, because the defendant's statement regarding DPH's two year investigation was a fair and accurate abridgement, the fair report privilege applies as a matter of law and shields the defendant from liability for defamation as to this statement.

B

The plaintiff also claims that the defendant abused the fair report privilege by using the word "children" rather than the singular "child" in the headline of the first article.[12] The court held that the headline was not an abuse of the fair report privilege, reasoning: "The plaintiff first complains about the headline of the first article, 'State Probes Terryville Dentist for Excessive Work on Children's Teeth.' He argues the headline conveyed a message that the state's inquiry extended beyond the three year old patient that was the subject of the underlying complaint. The article is clear, however, that the case involved only one child. The report is accurate overall and any technical inaccuracy in the headline is not sufficient to make the report actionable."

We agree with the court that the headline was accurate overall and that any imprecision therein was ameliorated by the accuracy of the article's abridgement of the proceedings. See *Elder* v. *21st Century Media Newspaper, LLC*, supra, 204 Conn. App. 424 ("[a] fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts" (internal quotation marks omitted)).

On the basis of the foregoing, we conclude as a matter of law that the defendant did not abuse the fair report privilege by publishing the statement about DPH's investigation into the plaintiff or by its use of the word "children" in the headline of the first article. Therefore, the court properly rendered summary judgment on the plaintiff's defamation claim.

II

The plaintiff next claims that the court erred in rendering summary judgment on his intentional misrepresentation claim. The plaintiff argues specifically that the court improperly "weighed the plaintiff's evidence against the plaintiff in favor of the [defendant] and drew inference[s] from the plaintiff's evidence in favor of the [defendant]."[13] We disagree.

As stated previously herein, "[o]ur review of the trial court's decision to grant [a] motion for summary judgment is plenary." *Elder* v. *21st Century Media Newspaper, LLC*, supra, 204 Conn. App. 420. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Id. "When the evidence in a summary judgment record reasonably is susceptible to competing inferences, it is improper for a trial court, in ruling on the summary judgment motion, to choose among those inferences." *Doe* v. *West Hartford*, 328 Conn. 172, 197–98, 177 A.3d 1128 (2018).

In rendering summary judgment on the plaintiff's intentional misrepresentation claim, the court stated: "From the evidence submitted by the plaintiff it appears Ormseth was in fact working on an article about another

dentist. The plaintiff has submitted evidence that the article Ormseth was preparing did include reporting about another dentist, as described, in a practice that was partially owned by the plaintiff. According to the [defendant's] September 4, 2018 internal . . . email submitted by the plaintiff in opposition to the [defendant's] motion, [an editor for the defendant] eliminated the portions of the draft article that concerned the other dentist. The plaintiff's evidence establishes that Ormseth's statement that he was working on an article about another dentist was true, not false.

"The factual dispute between the parties is whether Ormseth told the plaintiff he was writing an article about *him*. Ormseth says he did; the plaintiff says he did not. But the affirmative representation relied upon by the plaintiff, that Ormseth was working on a story about another dentist, is an accurate statement. Assuming Ormseth said he was working on a story concerning the other dentist without mentioning that the plaintiff was also a subject of the story, Ormseth may have allowed the plaintiff to believe the story would not be about him, without actually saying so. . . . Because Ormseth's affirmative representation was true, because he had no duty to tell the plaintiff he would be the subject of [an] article [by the defendant], and because the plaintiff had no legal right to interfere with the [defendant's] publication of a story about him, the [defendant] is entitled to summary judgment on" the plaintiff's claim for intentional misrepresentation. (Emphasis in original.)

The plaintiff argues that the court improperly engaged in fact finding by stating the following: "The plaintiff's purpose in submitting [the defendant's internal email exchange] was to corroborate his claim that Ormseth told him he was preparing an article about another dentist. Viewed slightly differently, however, the evidence also reflects that Ormseth was truthful when he told the plaintiff he was working on an article about another dentist. The plaintiff's complaint is that Ormseth omitted any mention of the fact that the plaintiff would also be the subject of the article."[14]

The flaws in the plaintiff's argument are manifold, but, most crucially, the court never chose between competing interpretations of fact. As the court properly held, Ormseth's affirmative statement to the plaintiff—that he was working on an article about another dentist—is apparently true as evidenced by the plaintiff's own affidavit and evidence, thus defeating any claim of intentional misrepresentation.[15] See *Dickau* v. *Mingrone*, 196 Conn. App. 59, 66 n.7, 229 A.3d 479 (2020) (listing as required element of intentional misrepresentation that false statement be made as statement of fact). We conclude that the court did not impermissibly weigh evidence or choose between competing inferences. We further conclude that the court properly

granted the defendant's motion for summary judgment as to the intentional misrepresentation claim.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's complaint alleged "deceitful misrepresentation," which the trial court construed as a claim of intentional misrepresentation. The plaintiff also purported to assert claims for negligent infliction of emotional distress and gross negligence. The court, identifying that those claims arose from the same underlying facts as the plaintiff's defamation claim, granted summary judgment on those two claims on the same ground as the plaintiff's defamation claim. The plaintiff has not challenged this aspect of the court's judgment on appeal.

[2] As a result of the first proceeding, the plaintiff signed a consent order in which he admitted to prescribing medications to himself and family members outside the scope of dentistry, which required that the plaintiff pay a $2000 civil penalty to the state and waive his right to a hearing on the merits of the matter.

[3] General Statutes § 4-179 provides in relevant part: "(a) When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision.

"(b) A proposed final decision made under this section shall be in writing and contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision, including the specific provisions of the general statutes or of regulations adopted by the agency upon which the agency bases its findings. . . ."

[4] The panel consisted of two dentists and a registered nurse, all of whom were commissioners on the commission.

[5] Smile by Design was a dental practice that was co-owned by the plaintiff.

[6] The parties do not dispute that the image included in the article does not depict the plaintiff or the patient.

[7] "On September 10, 2018, the plaintiff appealed to the Superior Court. . . . After briefing by the parties and oral argument, on January 7, 2020, the court issued an order remanding the final decision for clarification of [a] finding [of fact] . . . . [A panel of commissioners] heard this issue on remand and issued a new proposed final decision, finding, inter alia, that 'the use of stainless steel crowns was not justified, and [that the plaintiff] practiced below the standard of care in using eight stainless steel crowns.' . . . On June 16, 2020, the commission issued a second final decision, this time determining that it was not a violation of the standard of care to place eight stainless steel crowns in the patient's mouth, but that the disciplinary orders contained in the initial decision were still appropriate on the basis of the other findings concerning the allegations against the plaintiff.

"On August 10, 2020, the court issued a second remand order related to the same charge. Specifically, the court ordered the commission to reconcile an inconsistency between the finding of fact that the plaintiff 'did not practice below the standard of care with respect to the placement of the stainless steel crowns' with a statement in its decision that 'the [department] sustained its burden of proof' with respect to this charge. . . . On September 16, 2020, the commission issued a third and final decision . . . . The final decision stated that, '[w]ith regard to the allegations . . . of the charges that [the plaintiff] placed one or more crowns without adequate justification . . . the department did not sustain its burden of proof.' " *Idlibi* v. *State Dental Commission*, 212 Conn. App. 501, 511–12, 275 A.3d 1214, cert. denied, 345 Conn. 904, 282 A.3d 980 (2022). The final decision sustained the original sanctions.

The plaintiff appealed the final decision, and "[o]n October 13, 2020, the court issued a written decision dismissing the plaintiff's appeal." Id., 513. This court subsequently affirmed the court's dismissal of the plaintiff's appeal. Id., 532.

[8] See footnote 1 of this opinion.

[9] On the same day, the plaintiff filed a supplemental affidavit in which he asserted that Ormseth "assured [the plaintiff] that he was writing a story about another dentist from" the plaintiff's practice. In support of that asser-

tion, the plaintiff attached an email chain between Ormseth and a senior editor for the defendant to his supplemental affidavit. The email contained a draft of the article that included reference to a dentist other than the plaintiff. However, in their email correspondence, the senior editor notified Ormseth that he removed the sections referencing the other dentist.

[10] The court concluded that the statistic—regarding the number of crowns placed on children under general anesthesia and insured by Medicaid—was not protected by the fair report privilege but was nonetheless exempt from liability for defamation because it was substantially true. The court held that the remaining allegedly defamatory statements identified by the plaintiff in his memorandum in opposition to summary judgment were protected by the fair report privilege.

[11] Although the plaintiff identified five allegedly defamatory statements in his objection to the motion for summary judgment, in this appeal he focuses on only three of those statements. Specifically, on appeal, the plaintiff does not rely on the statements referring to the plaintiff's actions as "medically unsound" or his prescription of medications outside the scope of dentistry. These aspects of the claim raised before the trial court are therefore deemed abandoned. See *Goshen Mortgage, LLC* v. *Androulidakis*, 205 Conn. App. 15, 35 n.15, 257 A.3d 360 ("arguments [that] have not been advanced on appeal . . . are deemed abandoned"), cert. denied, 338 Conn. 913, 259 A.3d 653 (2021).

The plaintiff also claims, for the first time on appeal, that the defendant's publication of a particular image in both articles constituted an abuse of the fair report privilege because it was "a misleading picture of a child undergoing invasive [dental] implants" and was unrelated to the proceedings. Although the plaintiff referenced the image before the trial court in several pleadings and at the summary judgment hearing, he never did so in further-ance of a distinct argument that the picture itself abused the fair report privilege, as he now does on appeal. Because this issue was not distinctly raised before, or decided by, the trial court, it is not properly before us now. *Elder* v. *21st Century Media Newspaper, LLC*, supra, 204 Conn. App. 421.

Additionally, the plaintiff claims that the defendant abused the fair report privilege by using a DSS statistic "unrelated to the official proceeding." However, the court held that the fair report privilege *did not apply* to this statement—instead holding that it was substantially true: "A statement procured from a public official by a reporter working on a story does not appear to fall within the scope of the fair report privilege, which applies only to an official action or proceeding or of a meeting open to the public. . . . Nevertheless, the statement as reported by the [defendant] was substan-tially true and therefore not actionable." (Citation omitted; internal quotation marks omitted.) Therefore, to the extent that the plaintiff claims that the use of the DSS statistic was an abuse of the fair report privilege, such claim is moot. *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017) (claim is moot where appellant fails to challenge basis of trial court's adverse ruling). We further note that the plaintiff fails to sufficiently brief his argu-ment that the DSS statistic was not substantially true. Accordingly, we decline to review this claim. See *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019) ("[b]ecause we conclude that the defendants have failed to adequately brief this claim, we decline to review it").

[12] The plaintiff also claims that the headline of the first article, as well as other statements made by the defendant, indicate malice and that the court erroneously held that the privilege applied regardless of malice. In response to the plaintiff's September 23, 2021 motion for articulation, the court stated that it "did not reach the plaintiff's allegations of malice . . . in rendering its decision on summary judgment. The fair report privilege applies even assuming, arguendo, the plaintiff could prove those allegations." Quoting *Elder* v. *21st Century Media Newspaper, LLC*, supra, 204 Conn. App. 422, the court concluded that "[t]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se." (Internal quotation marks omitted.) Because we agree with the court that the fair report privilege applies in the present case, the plaintiff's malice argument fails as a matter of law. See id.

[13] The plaintiff also claims that the "court erroneously ruled that the plaintiff's claim of fraudulent misrepresentation cannot be sustained because Ormseth does not have the duty to speak, i.e., to disclose to the plaintiff, that Ormseth was writing a story about the plaintiff. The court overlooks the plaintiff's claim that the plaintiff had the right to remain silent and not

to speak to Ormseth or to any member of the press." However, the plaintiff does not cite to any relevant authority in support of this argument. Because we conclude that the plaintiff has failed to adequately brief this claim, we decline to review it. *Starboard Fairfield Development, LLC* v. *Gremp*, supra, 195 Conn. App. 31.

Insofar as the plaintiff intended for this argument to challenge the court's alternative grounds for rendering summary judgment—that the plaintiff was actually alleging fraud by omission and failed because "he had no legal right to know the [defendant] was writing an article about him"—that argument is inadequately briefed and we decline to review it. Id.

[14] Additionally, the plaintiff suggests that the court could not use evidence submitted in the plaintiff's affidavit in support of its decision to render summary judgment. The court was permitted, however, under Practice Book § 17-49, to consider the email attached to the plaintiff's affidavit in rendering summary judgment. See *Salamone* v. *Wesleyan University*, 210 Conn. App. 435, 443, 270 A.3d 172 (2022) ("Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law").

[15] The court additionally construed the plaintiff's claim as one of fraud by omission. The court concluded that the plaintiff had no legal right to know the defendant was writing an article about him and, therefore, could not sustain a claim of fraud by omission. On appeal, the plaintiff asserts that he had a right to not talk to Ormseth but does not otherwise challenge this aspect of the court's conclusion. See footnote 13 of this opinion.

[16] The plaintiff claims that the court erred in denying his motion to reargue. On the basis of our discussion herein, we conclude that the court did not abuse its discretion in denying reargument on the plaintiff's defamation and intentional misrepresentation claims. See *JPMorgan Chase Bank, N.A.* v. *Eldon*, 144 Conn. App. 260, 277, 73 A.3d 757 ("The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.)), cert. denied, 310 Conn. 935, 79 A.3d 889 (2013).